**FOR PUBLICATION**

```
              IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

                                        )
UNITED STATES OF AMERICA and the        )
PEOPLE of the VIRGIN ISLANDS,           )
                                        )
                Plaintiffs,             )    Criminal No. 2008-21
                                        )
                v.                      )
                                        )
RONALD LEWIS, JR. and MALIK             )
OSTALAZA,                               )
                                        )
                Defendants.             )
_____)
```

**ATTORNEYS:**

**Ishmael A. Meyers, Jr., AUSA**
St. Thomas, U.S.V.I.
   *For the plaintiffs.*

**George H. Hodge, Jr., Esq.**
St. Thomas, U.S.V.I.
   *For defendant Ronald Lewis, Jr.*

**Jesse A. Gessin, AFPD**
St. Thomas, U.S.V.I.
   *For defendant Malik Ostalaza.*

<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the defendants, Ronald Lewis, Jr. ("Lewis") and Malik Ostalaza ("Ostalaza") (together, the "Defendants"), to suppress physical evidence and statements.

### I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The Defendants were indicted in May, 2008 on five firearms-

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 2

related offenses. On June 18, 2008, the Court conducted a hearing on the Defendants' motion to suppress. At that hearing, the government presented the testimony of Virgin Islands law enforcement officers. According to that testimony, on February 20, 2008, four Virgin Islands police officers were searching for a robbery suspect in an area known as the Tutu High Rise Housing Community on St. Thomas, U.S. Virgin Islands. During their search, the officers observed a red car exiting the housing community. One of the officers noticed that the occupants of the car were not wearing seatbelts and that the passenger, Ostalaza, was bending down in his seat. The officers pulled the car over behind a nearby school. Over the loudspeaker, the officers ordered the driver, Lewis, to prepare his driver's license, vehicle registration and insurance information, and to step outside the car. Lewis exited the car and walked over to the officers' vehicle.

While the officers were inspecting Lewis's documents, Ostalaza exited the car of his own accord and began walking away from the premises. The officers called him back. One of the officers approached the car, looked inside, and saw an extended magazine clip, which he called to his colleagues' attention. That officer then grabbed Ostalaza's hand and escorted him to the rear of the vehicle, near the trunk. Another officer then

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 3

approached the car, looked inside, and saw the butt of a firearm protruding from the center console.  One of the officers proceeded to retrieve that firearm, and discovered another firearm behind it.  The officers subsequently asked the Defendants if they had licenses to possess firearms.  The Defendants both answered in the negative.  The Defendants were immediately read their *Miranda* rights and placed under arrest.

## II. ANALYSIS

The Defendants contend that (1) the physical evidence seized from their car and (2) the statements they made to police officers should be suppressed.

**A.   Seizure of Physical Evidence**

The Defendants first argue that the physical evidence seized from their car should be suppressed as the product of an unreasonable search.

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const., amend. IV. 2.  "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).  There is a presumptive requirement that searches or seizures be carried out pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967) ("[S]earches conducted outside

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 4

the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.") (internal citations omitted). Once the defendant has challenged the legality of a search and seizure, the burden is on the government to prove that they were constitutional. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996). Evidence arising out of an unlawful search will be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

Although individuals have a reduced expectation of privacy in motor vehicles due to the high level of regulation to which they are subject, *California v. Carney*, 471 U.S. 386, 392 (1985), the stop of a car and detention of its occupants constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Johnson*, 63 F.3d at 245. Accordingly, such a stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren*, 517 U.S. at 810. In determining whether a traffic stop is reasonable a court must make two inquiries: first, "whether the officer's action was justified at its inception," and second, "whether it was reasonably related in scope to the circumstances which justified the interference in

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 5

the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). If the initial traffic stop was illegal or the officers exceeded the stop's proper scope, the seized contraband is excluded under the "fruit of the poisonous tree doctrine." *See Wong Sun*, 371 U.S. at 484.

"[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997); *see also Whren*, 517 U.S. at 810 (holding that traffic stops are reasonable under the Fourth Amendment where officers have probable cause to believe that the defendant violated the traffic code, even if the ultimate charge is not related to the traffic stop).

Here, the government presented testimony establishing that Virgin Islands police officers observed the Defendants in a moving vehicle without wearing their seatbelts. The Defendants' conduct was in violation of Virgin Islands law. *See* V.I. CODE ANN. tit. 20, § 466(a) (Lexis 2008) ("No person shall operate a motor vehicle unless the operator and any passenger in the front seat of the vehicle are restrained by a safety belt."). The officers' testimony was unrebutted. Because the Court finds that testimony credible, the Court further finds that the officers' actions were justified, at least at the outset. *See*, *e.g.*, *United States v.*

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 6

*Hanrahan*, 508 F.3d 962, 967 (10th Cir. 2007) (affirming the denial of a suppression motion where the district court found the officer's "testimony credible and therefore determined that the stop was warranted because he had reasonable suspicion that" the defendant had violated a state traffic law), *cert. denied*, 128 S. Ct. 1753 (2008); *Boggs v. Bair*, 892 F.2d 1193, 1200 (4th Cir. 1989) (holding that the defendant's fruit of poisonous tree argument failed because the search of the car was lawful), *cert. denied*, 495 U.S. 940 (1990).

If a traffic stop is "justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (citation omitted). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *Id.* (citation omitted). "In determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience." *Id.* (citation omitted); *see also Maryland v. Macon*, 472 U.S. 463, 470-71 (1985) ("Whether a Fourth Amendment violation has occurred

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 7

'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time . . . .'") (quoting *Scott v. United States*, 436 U.S. 128, 136 (1978)).

Here, the officers lawfully stopped the Defendants for a traffic violation, and thus were lawfully next to the Defendants' car when they observed, in plain view, an extended ammunition magazine and the butt of a firearm protruding from the center console of the car.[1] While the open carrying of a weapon may be legal in the Virgin Islands, it is well established that otherwise legal or innocent conduct may still create a reasonable suspicion that criminal activity is afoot. *See United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.") (internal quotation marks and citation

---

[1] At the hearing, Lewis argued that the Court of Appeals for the Third Circuit's recent decision in *United States v. Daniel*, 518 F.3d 205 (3d Cir. 2008), forecloses the possibility that the officers in this matter could base reasonable suspicion on their observation of ammunition. Lewis's reliance on *Daniel* is misplaced. First, in *Daniel*, the Third Circuit essentially held that no person could be convicted under the Virgin Islands statute criminalizing the unlawful possession of ammunition. That holding cannot be said to bear on whether police officers may have reasonable suspicion that criminal activity is afoot when they see ammunition. Second, the testimony in this matter reflects that the officers saw not only ammunition, but a firearm.

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 8

omitted); *United States v. Brown*, 448 F.3d 239, 252 (3d Cir. 2006) (noting that "legal, innocent behavior at times corroborates other information to raise reasonable suspicion").

The Defendants' conduct during their encounter with the officers lends further support to a finding of reasonable suspicion. For example, the officers observed Ostalaza bending down in his seat when they stopped the Defendants' car. The officers reasonably could have perceived that conduct as furtive or evasive. *See*, *e.g.*, *United States v. Powell*, 176 Fed. Appx. 267, 269 (3d Cir. 2006) (unpublished) (affirming the denial of a suppression motion where the record showed, *inter alia*, that the defendant had displayed "furtive movements"), *cert. denied*, 127 S. Ct. 151 (2006); *United States v. Edmonds*, 240 F.3d 55, 61 (D.C. Cir. 2001) (recognizing that "'furtive' gestures in response to the presence of the police can serve as the basis of an officer's reasonable suspicion"); *U.S. ex rel. Richardson v. Rundle*, 461 F.2d 860, 864 (3d Cir. 1972) (noting that "the significance of furtive actions . . . is . . . applicable to" *Terry* stops, and may constitute the basis of individualized suspicion sufficient to justify a *Terry* stop), *cert. denied*, 410 U.S. 911 (1973).

Furthermore, while Lewis was showing his documentation to officers near the officers' car, Ostalaza exited the car in which

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 9

he had been riding and began walking away from the premises as if, according to the officers' testimony, he were "fleeing." One of the officers had to walk over to the Defendants' car and order Ostalaza to return to the scene of the stop. It was only at that moment that the officer noticed the magazine.

Courts routinely take into consideration a suspect's flight when making reasonable suspicion determinations. *See*, *e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 125-26 (2000) (reasoning that flight upon noticing police, plus some other indicia of wrongdoing, can constitute reasonable suspicion); *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (considering the suspect's flight); *United States v. Shorter*, 36 Fed. Appx. 691 (3d Cir. 2002) (unpublished) (affirming the district court's denial of the defendant's suppression motion where the police "had reasonable suspicion that he was involved in criminal activity" when they saw his "conduct and his fleeing"); *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) ("Evasive conduct, although stopping short of headlong flight, may inform an officer's appraisal of a streetcorner encounter."); *United States v. Singleton*, Crim. No. 07-282, 2008 U.S. Dist. LEXIS 42368, at *8 (W.D.N.C. May 29, 2008) (finding support for a reasonable suspicion finding where "the Defendant made a 180 degree turn and began walking away").

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 10

Based on Ostalaza's bending down in the car and subsequent unprovoked, evasive maneuvering, as well as the officers' observation of an extended magazine and a partially-concealed firearm, the Court finds that the officers could reasonably suspect that criminal activity was afoot. The Court further finds that the officers' relatively brief detention of the Defendants was reasonably tailored to dispel any suspicions the officers may have had concerning the Defendants' potential involvement in criminal activity, that is, whether the Defendants possessed firearms in violation of statute. *See*, *e.g.*, *United States v. Scheets*, 188 F.3d 829, 838 (7th Cir. 1999) (finding that the officers' questions "were specifically tailored to establish [the defendant's] identity and either to confirm or dispel the officers' suspicions regarding [the defendant's] involvement in the bank robbery") (citation omitted), *cert. denied*, 528 U.S. 1096 (2000).

Furthermore, the officers' shift from questions relating to the Defendants' traffic violation to questions relating to whether the Defendants had licenses to possess firearms, did not require independent reasonable suspicion because those latter questions in no way prolonged the stop.[2] *See Muehler v. Mena*, 544

---

[2] Indeed, the duration of the officers' questioning of the Defendants could hardly have been briefer. Such brevity weighs against a finding that the Defendants were seized. *See*, *e.g.*,

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 11

U.S. 93, 101 (2005) (holding that "mere police questioning does not constitute a seizure" unless it prolongs the detention of the individual); *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (rejecting the proposition that the shift in purpose of a traffic stop into an investigation of other criminal activity was unlawful because it was not supported by any reasonable suspicion); *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007) (reasoning that because "the officers' questioning did not prolong the stop, we are compelled to hold that the expanded questioning need not have been supported by separate reasonable suspicion"), *cert. denied*, 127 S. Ct. 2277 (2007).

Once the Defendants answered the officers' question about their unlicensed possession of firearms in violation of statute, the officers had probable cause to believe that the Defendants had committed a crime. *See*, *e.g.*, *United States v. Muhammad*, 120 F.3d 688, 696 (7th Cir. 1997) ("Probable cause [to arrest] exists when at the moment an arrest is made officers have 'facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information' that would sufficiently 'warrant a prudent man in believing that the [suspect] had

---

*United States v. Bengivenga*, 845 F.2d 593, 600 (5th Cir. 1988) (noting that law enforcement agents questioned the suspects for only "a minute and a half"), *cert. denied*, 488 U.S. 924 (1988); *Williams v. United States*, 381 F.2d 20, 21 (9th Cir. 1967) (considering "the brief interrogation" of the defendants).

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 12

committed or was committing the offense.'") (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *United States v. Brady*, 819 F.2d 884, 889 (9th Cir. 1987) (finding that officers had probable cause based on the detainee's answer affirmative answer to the question whether he had a gun in his car), *cert. denied*, 484 U.S. 1068 (1988); *cf. Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("[U]nless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.").  Accordingly, the officers read the Defendants their *Miranda* rights.  Because the officers' arrest of the Defendants was supported by probable cause based on the officers' having learned that the Defendants were in unauthorized possession of firearms, the officers were entitled to conduct a search incident to that arrest. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (noting that the Fourth Amendment permits warrantless arrests based upon probable cause); *United States v. Watson*, 423 U.S. 411, 423-24 (1976) (same); *United States v. Nigro*, 218 Fed. Appx. 153, 156-57 (3d Cir. 2007) (not precedential) ("If there is an objective basis for the arresting officer to fear the arrestee or the surrounding environment, a search of the area where the arrest occurred is a search incident to arrest.") (internal quotation marks, citations and alteration omitted), *cert. denied*, 127 S. Ct. 2145 (2007).

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 13

"[A] search incident to arrest has both geographic and temporal limitations." *United States v. Myers*, 308 F.3d 251, 266 (3d Cir. 2002). "A legitimate search incident to arrest is limited to the arrestee's person and to the area within his immediate control, meaning the area from which he might gain possession of a weapon or destructible evidence." *Id.* at 267 (quoting *United States v. Hudson*, 100 F.3d 1409, 1419 (9th Cir. 1996) (internal quotation marks and citation omitted), *cert. denied*, 522 U.S. 939 (1997)).

Here, the officers searched the Defendants' car after arresting the Defendants. That search was valid because it occurred immediately after the Defendants' arrest and covered a circumscribed area -- that is, the car -- to which the Defendants could have regained access, for instance, to recover weapons. *See*, *e.g.*, *New York v. Belton*, 453 U.S. 454, 460 (1981) (holding that, when a policeman has made a lawful custodial arrest of the occupant of an car, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that car); *United States v. Baker*, 221 F.3d 438, 443 (3d Cir. 2000) (noting that "officers may lawfully search the passenger compartment of the car incident to arrest") (citation omitted); *United States v. Bush*, 647 F.2d 357, 361 (3d Cir. 1981) (concluding that the arrest of the suspect "was supported by probable cause, and that

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 14

the subsequent search of [the suspect] was a legitimate search incident to arrest").

Accordingly, the Court concludes that suppression of the physical evidence seized from the Defendants' car is unwarranted.

**B.     Statements**

The Defendants contend that their statements to the officers should also be suppressed as the product of an unlawful custodial interrogation.

The "inherently coercive" environment created by police custodial interrogation threatens the exercise of the Fifth Amendment privilege against self-incrimination. *New York v. Quarles*, 467 U.S. 649, 654 (1984). When a defendant is subject to custodial interrogation by the police, procedural safeguards are necessary to preserve the defendant's Fifth Amendment privilege against compelled self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that absent procedural safeguards, there is an irrebuttable presumption of coercion when a defendant is interrogated while in police custody).

In *Yarborough v. Alvarado*, the Supreme Court gave the following description of the test for *Miranda* custody purposes:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 15

> interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a . . . restraint on freedom of movement of the degree associated with a formal arrest.

541 U.S. 652, 663 (2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (quotation marks omitted)).

Factors to be considered when determining whether an interrogation takes on custodial dimensions include:

> (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.

*United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006) (citations omitted), *cert. denied*, 547 U.S. 1208 (2006).

Here, as discussed above, the Defendants were initially detained pursuant to a lawful *Terry* stop because the officers had reasonable suspicion that criminal activity was afoot. "Such Terry-stops do not render a person in custody for purposes of *Miranda*." *United States v. Galberth*, 846 F.2d 983, 994 (5th Cir. 1988) (citations omitted), *cert. denied*, 488 U.S. 865 (1988); *see also United States v. Bengivenga*, 845 F.2d 593, 599 (5th Cir. 1988) (en banc) ("[W]here an officer asked a motorist to step out of his car and to perform a sobriety test, simply asking

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 16

passengers to step off a bus and inquiring about ownership of luggage does not render a suspect in custody."), *cert. denied*, 488 U.S. 924 (1988).

Incident to such a stop, police officers are entitled to ask questions of a suspect "as long as the[y] . . . do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991). The record in this matter does not suggest that any such message was conveyed. Nor do the Defendants contend that they felt constrained to answer the officers' questions. As such, the officers' questioning did not by itself transform the officers' lawful stop of the Defendants into a custodial scenario. *See*, *e.g.*, *Ohio v. Robinette*, 519 U.S. 33 (1996); *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (en banc) (holding that the nature of the second question posed by an officer -- whether the suspect was carrying any marijuana -- did not convert an otherwise permissible traffic stop detention into a custodial interrogation), *cert. denied*, 537 U.S. 829 (2002). Indeed, the credible and unrebutted testimony at the suppression hearing indicates that the Defendants voluntarily answered the officers' questions. *See*, *e.g.*, *United States v. Francis*, 140 Fed. Appx. 184, 187 (11th Cir. 2005) (not for publication) (concluding that the defendant was not in custody where the record showed that he had "voluntarily

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 17

consented to answer the officer's questions"), *cert. denied*, 546 U.S. 1045 (2005).

Moreover, other elements in the record do not bear the hallmarks of a custodial interrogation. For instance, the stop took place during the day behind a school, near a housing community and in full view of any passerby, thereby reducing the ability of the officers to use illegitimate means to elicit inculpatory statements and diminishing the Defendants' fear that if they did not cooperate they would be subjected to abuse. *Berkemer*, 468 U.S. at 438; *cf. United States v. Perdue*, 8 F.3d 1455, 1466 (10th Cir. 1993) (concluding that the defendant was entitled to *Miranda* warnings where, *inter alia*, [t]he *Terry* stop occurred in an isolated, rural area not subject to the public's scrutiny"). There is also no evidence that the officers physically restrained the Defendants beyond patting them down for safety reasons, spoke to them in harsh or coercive tones, or warned them that they might be taken to a police station.[3] *Cf.*

---

[3] That Ostalaza was summoned back by police after walking away from the premises does not mean he was not free to leave for *Miranda* purposes, since an officer's order that a suspect stay in his car or exit his car during a routine traffic stop does not by itself give rise to a custodial scenario. *See, e.g., Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle . . . ."); *United States v. Sowers*, 136 F.3d 24, 28 (1st Cir. 1998) (finding that an order to remain within the stopped vehicle "was not onerous") (citations omitted), *cert. denied*, 525 U.S. 841

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 18

*United States v. Delano*, 543 F. Supp. 2d 791, 801 (N.D. Ohio 2008) (finding a de facto arrest where the officer asked the defendant to get out of the car, handcuffed her and informed her that he would be taking her to the police station).

Viewing the facts of this matter under the totality of the circumstances, the Court finds that the Defendants were not "restrained to the degree associated with formal arrest." *See*, *e.g.*, *United States v. Killingsworth*, 118 Fed. Appx. 649, 651 (3d Cir. 2004) (unpublished). As a consequence, the Court concludes that the Defendants were not in custody for *Miranda* purposes when they answered the officers' question whether they had licenses to possess weapons. *See*, *e.g.*, *Willaman*, 437 F.3d at 360 (concluding that because the defendant was not in custody, "[o]f course, in these circumstances *Miranda* is not implicated").

Accordingly, the Defendants' statements will not be suppressed.[4]

---

(1998).

[4] Despite the Court's finding that suppression is inappropriate in this matter, one additional point bears mentioning. At the suppression hearing, the government appeared to argue that the police officers' conduct was a result of law enforcement's interpretation of rulings from the Superior Court of the Virgin Islands. The government's argument is flawed to the extent it suggests that this Court's rulings on constitutional matters should conform to law enforcement's expectations and interpretations of judicial opinions. The Court thus reminds the government that its burden on a suppression motion is to establish that law enforcement's conduct is

*United States, et al. v. Lewis, et al.*
Criminal No. 2008-21
Memorandum Opinion
Page 19

### III. CONCLUSION

For the reasons given above, the Defendants' motion to suppress will be denied in its entirety. An appropriate order follows.

S_____
 **CURTIS V. GÓMEZ**
 **Chief Judge**

---

constitutionally permissible, not to urge this Court to conform its ruling to the expectations of law enforcement.